UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

| | |
|---|---|
| JESUS RAMOS and NORMA DOLSON, *individually and as parents and co-administrators of the estate of Francine E. Ramos, deceased*; JOSEPH GRAY, JR. and IRENE GRAY, *individually and as parents and co-administrators of the estate of Trevor D. Gray, deceased*; and EDWARD KETROW, *individually and as parent and administrator of the estate of Kory Ketrow, deceased,* : : : : : : : : : | |
| Plaintiffs, : : | |
| v. : : | No. 5:16-cv-00304 |
| WAL-MART STORES, INCORPORATED; WAL-MART STORES EAST, L.P.; WAL-MART STORES EAST, INC.; NICOLE ANN EVERETT; ADDIEL JAVIER; and JOHN DOE WALMART CASHIER, : : : : : : : | |
| Defendants. : | |

———————————————————————

**MEMORANDUM OPINION**

**Plaintiffs' Motion to Remand, ECF No. 18 – Granted**

**Joseph F. Leeson, Jr.**                                              **August 18, 2016**
**United States District Judge**

## I.      Introduction

Defendants removed this case from the Court of Common Pleas of Philadelphia County, Pennsylvania. The two named individual defendants are not diverse from most of the Plaintiffs, but Defendants contend that they were fraudulently joined solely to defeat diversity jurisdiction. Defendants also contend that federal question jurisdiction is available because at least one of the Plaintiffs' state law claims raises a federal issue sufficient for this case to be deemed to arise under federal law. Neither contention has merit. Accordingly, this case is remanded to the Court of Common Pleas.

## II.      Factual and Procedural Background

According to the Plaintiffs, on July 5, 2015, twenty-year-old Robert Jourdain walked into a Walmart store in Easton, Pennsylvania. Compl. ¶ 46, ECF No. 1-1. It was a few minutes before

three o'clock in the morning, and Jourdain was intoxicated, having spent four hours at a bar earlier that night. *Id.* ¶¶ 47, 51. While in the store, he purchased a box of "Winchester .38 caliber handgun bullets" from either Defendant Nicole Everett, the store's general manager, Defendant Addiel Javier, the store's sporting goods manager, or another, unidentified cashier—or some combination of the three. *See id.* ¶¶ 25-27, 49. None of them asked Jourdain to present identification or made any other effort to ascertain his age before completing the transaction. *Id.* ¶¶ 53-55.

Jourdain then left the store, loaded the ammunition into a .38 caliber Smith & Wesson Model 10 revolver, and climbed into a vehicle driven by his friend, Kareem Mitchell. *See id.* ¶¶ 49, 57-59, 77. With them in the vehicle was Todd West, Jourdain's cousin. *Id.* ¶ 59. Over the next hour, West—accompanied by Jourdain and Mitchell—shot and killed three people. *See id.* ¶¶ 61-75, 78-85. The first victim was Kory Ketrow. At approximately 3:14 a.m.—less than thirty minutes after Jourdain purchased the ammunition—West spotted Ketrow in front of his home on Lehigh Street in Easton. *Id.* ¶¶ 61, 81. West fired at him from the window of Mitchell's vehicle, then exited the vehicle and continued to fire. *Id.* ¶ 81. Ketrow was still alive when he was discovered by first responders, but he later succumbed to multiple gunshot wounds. *Id.* ¶¶ 62-64.

West, Jourdain, and Mitchell then departed Easton and headed for Allentown. *Id.* ¶ 82. At approximately 3:35 a.m.—twenty minutes after West fatally wounded Ketrow—they encountered Francine Ramos behind the wheel of a vehicle located near the intersection of North Sixth Street and Greenleaf Street. *Id.* ¶ 67.  With her was Trevor Gray. *Id.* West shot Ramos numerous times; she was later found dead in the vehicle, bleeding from her head. *Id.* ¶¶ 67, 69, 82. Gray tried to flee and take cover behind another vehicle, but he too suffered multiple gunshot wounds. *Id.* ¶¶ 72-73, 83. First responders found him alive, leaning against a parked car, but he died en route to the hospital. *Id.* ¶¶ 72-73.

Criminal charges are pending in the Court of Common Pleas of Lehigh County, Pennsylvania. The Plaintiffs are the parents and administrators of the estates of the three people murdered that morning. They claim that Walmart and the three aforementioned Walmart employees are liable for the deaths of their children because they permitted an intoxicated twenty-year-old to purchase handgun ammunition at three o'clock in the morning—conduct which may have also violated a federal law prohibiting the sale of certain types of ammunition to buyers under the age of twenty-one. *See* 18 U.S.C. § 922(b)(1). They originally filed this suit in the Court of Common Pleas of Philadelphia County, but Defendants timely removed it to this Court, invoking both diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331.

The basis for invoking either of those grants of subject matter jurisdiction is not immediately apparent. Most of the Plaintiffs and both of the named individual Defendants (Everett and Javier) are citizens of Pennsylvania, *see id.* ¶¶ 1-20, 25-26, and the Complaint contains only state law claims for negligence, negligence per se, and negligent entrustment, *see id.* ¶¶ 109-213. Defendants contend, however, that Everett and Javier were fraudulently joined to

defeat diversity jurisdiction, which means that their presence may be disregarded for the purpose of this jurisdictional inquiry.[1] With respect to federal question jurisdiction, Defendants contend that this case belongs to that "small and special category" of cases that are deemed to arise under federal law despite containing no federal cause of action. *See Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). Plaintiffs disagree on both counts and believe that this action should be remanded. Plaintiffs are correct.

### III.    The individual Defendants, Everett and Javier, were not fraudulently joined.

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). However, the "removal statutes are to be strictly construed against removal," so this exception should not be invoked lightly. *Id.* at 217 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992)). Only if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant[]" can a plaintiff's decision to join a non-diverse party be considered fraudulent. *Id.* This means that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* This is not the same inquiry that a court conducts when a defendant moves to dismiss a case for failing to state a claim. *Id.* at 218. The fact that a plaintiff may not be able to prevail against a particular defendant does not necessarily mean that the decision to file suit against that defendant was fraudulent—more must be shown before it is safe to conclude that the defendant was joined in bad faith. The question is not whether the claims against the non-diverse defendant lack merit, but rather whether those claims are "wholly insubstantial and frivolous," *Id.* at 218 (quoting *Batoff*, 977 F.2d at 852), such that "they should have never been brought at the outset," *Batoff*, 977 F.2d at 853-54 (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). This standard places a "heavy burden of persuasion" on the removing party. *See Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851-52).

Defendants contend that no claim for negligence (whether under ordinary negligence principles or the doctrine of negligence per se) or negligent entrustment is cognizable against Everett or Javier because they did not personally participate in the sale of ammunition. Plaintiffs have alleged that both Everett and Javier "sold handgun ammunition to Robert Jourdian," *see* Compl. ¶ 35, and that they were "directly involved in the . . . sale," *see id.* ¶¶ 25-26, but Defendants argue that the Court may look past those allegations because they have produced affidavits from Everett and Javier declaring that they were not involved.[2]

---

[1]    The "John Doe Walmart Cashier" Defendant, and the possibility that he or she may be a Pennsylvania citizen, has no bearing on whether diversity jurisdiction exists. *See* 28 U.S.C. § 1441(b)(1).

[2]    *See* Notice of Removal Exs. D-E, ECF Nos. 1-4 to -5.

The problem with this argument is that a court engaging in a fraudulent joinder inquiry "must accept any well-pleaded allegations as true." *Briscoe*, 448 F.3d at 219; *Batoff*, 977 F.2d at 851-52. While it is true that "a court can look to more than just the pleading allegations to identify indicia of fraudulent joinder," it cannot do so for the purpose of adjudicating the merits of those allegations. *See Briscoe*, 448 F.3d at 219 (cautioning that "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits'" (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990))).[3] Plaintiffs have alleged that both Everett and Javier were directly involved in the sale, and to accept the truth of the affidavits would be to reject the truth of their well-pleaded allegations. That would be particularly troublesome in light of the fact that Plaintiffs have not yet had any opportunity to develop support for their allegations (and probe the veracity of these affidavits) through discovery. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 33 (3d Cir. 1985) (recognizing that where the plaintiffs had not "had a reasonable opportunity to complete discovery and develop a record" that "[i]t would be premature for a court . . . to declare at [that] stage that there [was] no basis in fact for the . . . allegations").

Even if Everett and Javier did not personally participate in the sale, that does not necessarily mean that a claim of negligence against them could not be asserted. Plaintiffs have also alleged, in the alternative, that if they were not involved in the transaction, they are liable for failing to properly train the cashier who did conduct the transaction. *See* Compl. ¶ 133. Defendants contend that no viable claim of negligence could be based on these allegations because under Pennsylvania law, "corporate officers may be held liable for misfeasance" but not "for mere nonfeasance."[4] *See Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).[5] In

---

[3]     For example, a court may look to a plaintiff's litigation conduct to assess whether that conduct is "consistent with an intention to actually proceed against at least some" of the non-diverse defendants. *See Briscoe*, 448 F.3d at 219 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). Or, if a defendant contends that no claim could be brought against a non-diverse defendant because of a statute of limitations, a court could review "reliable evidence" that establishes when the limitations period commenced, such as a "record from prior proceedings, which firmly establishes the accrual date for the plaintiff's claim, or in other relevant matters that are properly subject to judicial notice." *See id.* at 220.

[4]     While the Pennsylvania courts continue to adhere to the "old distinction between an agent's acts of nonfeasance and acts of misfeasance or malfeasance . . . the modern rule is that," as long as the agent participated in the tort, "personal liability can attach regardless of whether the breach was a result of misfeasance or nonfeasance." *See* Martin Petrin, *The Curious Case of Directors' and Officers' Liability for Supervision and Management: Exploring the Intersection of Corporate and Tort Law*, 59 Am. U. L. Rev. 1661, 1669-70 (2010). The notion that a principled distinction can be drawn between acts of misfeasance and acts of nonfeasance in this context has long been subject to criticism. *See id.* at 1670 n.38; *see, e.g.*, *Martin v. Wood*, 400 F.2d 310, 312-13 (3d Cir. 1968) ("[R]eliance is placed upon decisions of other jurisdictions dealing largely with the distinction, whether real or meaningless, between acts characterized as misfeasance and omissions labeled nonfeasance."); *Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994) ("[I]t is difficult to logically support a legal distinction that exonerates a corporate officer's act of nonfeasance while exacting retribution for acts of misfeasance or malfeasance. In practice, applying such labels may be more descriptive and thus conclusory than the facts would justify as a difference."); *Schaefer v. D & J Produce, Inc.*, 403 N.E.2d 1015, 1020 (Ohio Ct. App. 1978) (recognizing that "[t]his method of determining an agent's liability has been severely criticized").

[5]     *Wicks* dealt with true corporate officers—namely, a corporation's president, vice president, and secretary—but lower Pennsylvania courts have applied this distinction to ordinary employees as well. *See, e.g.*, *Pa. ex rel.*

Defendants' view, these allegations are based purely on nonfeasance: Everett and Javier had a duty to train the cashier, and they failed to do so. That, however, is an unduly narrow reading of the Complaint. The Complaint can fairly be read to allege not that Everett and Javier failed to provide the cashier with any training at all, but that the training that they did provide was inadequate. *See* Compl. ¶ 133 (alleging that "Nicole Everett and Addiel Javier are directly negligent for their failures to adequately train the John Doe Walmart Cashier"). So understood, Plaintiffs are claiming that Everett and Javier are liable for "the improper performance of an act," not the mere "omission of an act which a person ought to do." *See Brindley v. Woodland Vill. Rest., Inc.*, 652 A.2d 865, 868 (Pa. Super. Ct. 1995).

Defendants also contend that even if such a claim is viable under Pennsylvania law, it would be barred by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-03. The Act prohibits any person from bringing what it calls a "qualified civil liability action," which it defines as "a civil action or proceeding or an administrative proceeding . . . against a manufacturer or seller of a [firearm or ammunition] . . . resulting from the criminal or unlawful misuse of a [firearm or ammunition] by . . . a third party," unless one of the Act's specifically enumerated exceptions applies. *See* 15 U.S.C. §§ 7902(a), 7903(4)-(5). Among those are exceptions for "an action brought against a seller for negligent entrustment or negligence per se," *id.* § 7903(5)(A)(ii), and "an action in which a manufacturer or seller of a [firearm or ammunition] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought," *id.* § 7903(5)(A)(iii).

Plaintiffs have alleged that the sale of ammunition to Jourdain violated a Federal statute—namely, 18 U.S.C. § 922(b)(1), which prohibits a licensed dealer from selling ammunition to a person under twenty-one if the ammunition is other than for a shotgun or rifle. Defendants point out, however, that if Everett and Javier did not personally participate in the sale, they could not have "knowingly violated" § 922(b)(1), and if they personally did not violate that statute, they also could not be subject to liability under the doctrine of negligence per se. Nor, if they had no interaction with Jourdain, could they have negligently entrusted the ammunition to him within the meaning of the PLCAA, because the statute defines negligent entrustment as the supplying of firearms or ammunition "for use by another person when the seller knows, or reasonably should know, *the person to whom the product is supplied* is likely to . . . use the product in a manner involving unreasonable risk of physical injury." *See* 15 U.S.C. § 7903(5)(B) (emphasis added). Thus, in Defendants' view, a claim against Everett or Javier for failing to properly train the cashier would not fit into any of the PLCAA's exceptions.

This argument assumes that the PLCAA applies on a claim-by-claim basis, requiring every claim within a case to find its own exception to avoid being blocked by the Act. However, the text of the Act suggests that its applicability may instead depend upon on the nature of the

---

*Corbett v. Snyder*, 977 A.2d 28, 46 (Pa. Commw. Ct. 2009) (dealing with "mortgage salespersons" of a mortgage brokerage and investment group).

case as a whole, rather than the nature of each individual claim. This would mean that if the sum of the allegations made in a particular case triggers one of the Act's exceptions, the entire case is exempt from its scope. The first indication that this may be so comes from the fact that the Act prohibits not the bringing of specific claims, but the bringing of a "qualified civil liability *action*," which, as previously mentioned, is defined as "a *civil action* or *proceeding* or administrative *proceeding*" resulting from the criminal or unlawful misuse of a firearm or ammunition. *See* 15 U.S.C. § 7902(a), 7903(5)(A) (emphasis added). The term "action"— particularly the variant "civil action"—is often understood as a reference to a case as a whole, rather than to an individual claim. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."). The Act's six exceptions, too, speak of "actions," such as the aforementioned exception for "an action in which a manufacturer or seller of a [firearm or ammunition] knowingly violated a State or Federal statute applicable to the sale or marketing of the product." *See* 15 U.S.C. § 7903(5)(A)(iii). Of particular note are the two illustrations provided for this exception. According to the Act, this exception includes "any *case* in which the manufacturer or seller knowingly made any false entry in . . . any record required to be kept under Federal or State law" or "any *case* in which the manufacturer or seller aided, abetted, or conspired with any other person" to dispose of a firearm or ammunition to a person prohibited by federal law from possessing it. *See id.* § 7903(5)(A)(iii)(I)-(II) (emphasis added). The fact that these two examples consist of "cases," not individual claims, suggests that if there are allegations present in a case that a defendant violated state or federal law, the case is exempt from the Act.

If this is so, then the Act does not apply to this case. Plaintiffs have alleged that Walmart violated § 922(b)(1) by selling ammunition to the twenty-year-old Jourdian, which means this case would fall into the exception for "an action in which a . . . seller . . . of [ammunition] knowingly violated a State or Federal statute applicable to the sale or marketing of the product."[6] *See id.* § 7903(5)(A)(iii). At least two courts have construed the Act in this way. *See Corporan v. Wal-Mart Stores E., LP*, No. 16-2305, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18, 2016) (declining to "engage in [a] claim-by-claim analysis" of the applicability of the PLCAA because the statute's exceptions apply to "actions"); *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014) ("[T]his court finds two applicable PLCAA exceptions thereby permitting the entire Complaint to proceed through litigation, without the need for a claim-by-claim PLCAA analysis.").

Not all courts seem to agree. The Supreme Court of Missouri held that the Act barred a plaintiff from bringing a claim of negligence but did not preclude her claim of negligent

---

[6]     As one court has observed, "[t]he Act does not specify when in the course of a pending action a court is to determine that an action is a 'qualified civil liability action'" and therefore barred from proceeding. *City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 268 (E.D.N.Y. 2005), *aff'd in part and rev'd in part*, 524 F.3d 384 (2d Cir. 2008). If the applicability of the Act depends upon a disputed issue of fact, it may not be possible to fully resolve the issue until summary judgment, or trial. *See id.* At this stage, where Plaintiffs' allegations must be taken as true, it is those allegations that determine whether the Act prevents any claim from being asserted against Everett or Javier.

entrustment that was pending in the same case. *See Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016). The Alaska Supreme Court reached a similar conclusion in *Estate of Kim ex rel. Alexander v. Coxe*, holding that while "the PLCAA bar[red] a simple negligence claim," it did not prevent certain other claims from proceeding. *See* 295 P.3d 380, 388, 392-96 (Alaska 2013).[7] This interpretation, too, finds support in the Act's text. One of Congress's express purposes for adopting the Act was to "prohibit *causes of action* against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm solely caused by the criminal or unlawful misuse of firearm products," *see* 15 U.S.C. § 7901(b)(1) (emphasis added), which suggests that Congress intended for the Act to preclude any individual claim that does not fit within one of its exceptions. So does the fact that some of the Act's exceptions appear to pertain to individual claims, such as the exception for "an action brought against a seller for negligent entrustment or negligence per se," or the exception for "an action for breach of contract or warranty in connection with the purchase of the product." *See id.* § 7903(5)(A)(ii), (iv). And while the term "action" may be most commonly understood to refer to a case, rather than an individual claim, the term is sometimes used instead as shorthand for a single "cause of action." *See, e.g.*, 42 Pa. Cons. Stat. §§ 8301-20 (enumerating various statutory "rights of action" such as the "Death action" and "Survival action").

Ultimately, which of these interpretations of the PLCAA is correct is of little consequence for present purposes because the matter at hand is only whether Plaintiffs have stated a colorable claim against either Everett or Javier, not whether they can ultimately prevail. The fact that there is some difference of opinion about whether such a claim would be viable means that the claim is not "wholly insubstantial and frivolous." *See Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851-52) (recognizing that "any uncertainties as to the current state of controlling substantive law [must be resolved] in favor of the plaintiff"). Accordingly, Everett and Javier were not fraudulently joined, and their presence defeats diversity jurisdiction.

## IV. Plaintiffs' state law claims do not raise a federal issue sufficient to support federal question jurisdiction.

Defendants also argue that subject matter jurisdiction exists because this action arises under federal law. *See* 28 U.S.C. § 1331. Ordinarily, "a case arises under federal law when

---

[7]      Both of these courts, however, appear to have assumed that the Act must be applied on a claim-by-claim basis without directly addressing the question. The result the Alaska Supreme Court reached by applying the Act in this manner also appears to have resulted in an outcome at odds with the understanding of one of the Act's co-sponsors. In *Estate of Kim*, there were allegations that the defendant, a seller of firearms, had violated a number of federal firearms statutes, *see* 295 P.3d at 393-94, which would appear to trigger the exception for actions in which a seller knowingly violated state or federal law if that exception were understood to apply to the entire case. The court, however, proceeded to determine whether an exception existed for each claim in the case, and concluded that the plaintiff's "simple negligence claim" was barred because the Act contains no exception for that type of claim. *See id.* at 386-88. This result seems to conflict with a statement made by Senator Lindsey Graham during the debates over the Act, who expressed the belief that, as a seller, "[y]ou are on the hook, and can be held accountable based on *a simple negligence theory* or a negligence per se theory, if you violate a specific statute during the sale of a gun." 151 Cong. Rec. S9226 (daily ed. July 28, 2005) (emphasis added).

federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). That is not the case here because Plaintiffs' claims for negligence, negligence per se,[8] and negligent entrustment are all state law causes of action. However, there does exist a "small and special" category of cases that are deemed to arise under federal law despite lacking any federal cause of action. *Id.* at 1064-65 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). To qualify, the case must present a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065.

In addition to those requirements, there is one further limiting principle: the federal question must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 112-13 (1936)). Referred to as the "well-pleaded complaint rule," this requirement means that when a case is removed to federal court on the basis of federal question jurisdiction, the federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully*, 299 U.S. at 113.

There is a federal issue present on the face of Plaintiffs' Complaint. They have alleged that the sale of ammunition to Jourdain violated 18 U.S.C. § 922(b)(1), which prohibits selling certain types of firearms and ammunition to persons under twenty-one.[9] *See* Compl. ¶ 119(a) (alleging that Defendants "violate[d] laws defining the legal minimum age to buy handgun ammunition as 21 years old"). Under § 922(b)(1), it is unlawful for any dealer that is licensed to sell firearms under federal law to sell ammunition "to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age" if the "ammunition is other than . . . ammunition for a shotgun or rifle." According to Plaintiffs, Jourdain "was only 20 years of age" at the time of the sale, and the ammunition he purchased was "a box of 50 Winchester .38 caliber handgun bullets, meant for a Smith and Wesson revolver handgun." Compl. ¶¶ 47, 49. Based on these allegations, Plaintiffs contend that the sale violated federal law. The mere presence of a federal issue is not enough to confer jurisdiction, however—it must meet *Gunn's* four-part test.

---

[8]     As will be seen, under Pennsylvania law a "claim" of negligence per se is not actually a claim at all, but rather a theory by which some, but not all, of the elements of a claim of negligence may be satisfied.
[9]     Plaintiffs do not actually cite 18 U.S.C. § 922(b)(1), or any other particular statute, but they contend throughout the Complaint that the sale "violate[d] laws defining the legal minimum age to buy handgun ammunition as 21 years old. *See* Compl. ¶ 119(a). It is true, "[o]f course, [that] the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the . . . law[s] of the United States by his declaration or bill," *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.), but that does not mean that a party who chooses to plead a violation of federal law can avoid raising a federal issue simply by omitting the citation.

**A.      The federal issue is not "actually disputed."**

Defendants contend that these allegations implicate a dispute over the meaning of the phrase "ammunition . . . other than . . . ammunition for a shotgun or rifle" as used in § 922(b)(1). Plaintiffs have alleged that the ammunition Jourdain purchased was "Winchester .38 caliber handgun bullets," but Defendants contend that, in fact, this particular type of ammunition is capable of being used in certain rifles. *See* Notice of Removal ¶ 64 (contending that "the sale did not violate federal law because the .38 Special Caliber ammunition is interchangeable (it may be used in rifles or handguns)"). If that is true, a question would then arise whether that dual-capability means that this ammunition is not "other than . . . for a shotgun or rifle." One court held that the fact that certain ammunition was capable of being used in a limited number of antiquated rifles did not mean that the ammunition was "for a shotgun or rifle," because the ammunition was "universally regarded and marketed as strictly handgun ammunition." *See Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 466 (6th Cir. 2004). Defendants argue this case will turn on a similar dispute over the proper interpretation and application of this part of the statute.

The problem with this argument is that it seems to disregard the well-pleaded complaint rule. The allegations in the Complaint do not raise this issue, because nothing in the Complaint suggests that this ammunition is anything other than ".38 caliber handgun bullets." This issue arises only in light of Defendants' assertion that, based on facts outside of the Complaint, this particular ammunition is also capable of use in rifles.[10] Under the well-pleaded complaint rule, however, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983).

**B.      The federal issue is not "necessarily raised."**

Even assuming that the allegations in the Complaint implicate an actual dispute over the meaning of § 922(b)(1), this dispute is not "necessarily raised," because resolving the dispute in Plaintiffs' favor is not essential to any of their claims. Only when the "vindication of a right under state law necessarily turn[s] on some construction of federal law" is the federal issue sufficient to confer jurisdiction. *See Franchise Tax Bd.*, 463 U.S. at 9. The Complaint contains claims of negligence, negligence per se, and negligent entrustment, together with wrongful death and survival claims predicated on that same conduct. Proving that the sale of ammunition violated § 922(b)(1) is not essential to either the negligence or the negligent entrustment claims because Plaintiffs' theory is that it was negligent for Defendants to provide an intoxicated twenty-year-old with handgun ammunition at three o'clock in the morning, regardless of whether

---

[10]      This also suggests that this dispute is not "necessarily raised," because it is implicated only if Defendants first succeed in proving, as a factual matter, that the ammunition is capable of being used in a rifle.

that was also a violation of federal law.[11] Proving a violation of the statute is essential to their theory of negligence per se, but negligence per se is not a separate claim of its own. Rather, it is only a theory by which a plaintiff can prove the first two elements of a claim of negligence. *Cabiroy v. Scipione*, 2001 PA Super 29, ¶ 4 ("The concept of negligence per se establishes both duty and the required breach of duty . . . [but] [i]t does not end the inquiry. The plaintiff still bears the burden of establishing causation."). Plaintiffs' "claim" of negligence per se, therefore, is simply one theory by which they seek to prevail on their negligence claim, and "a claim supported by alternative theories in the complaint may not form the basis for . . . jurisdiction unless [federal] law is essential to each of those theories." *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).[12]  Resolving the meaning of § 922(b)(1) in Plaintiffs' favor may be essential to their theory of negligence per se, but it is not essential to either their negligence or negligent entrustment claims. As a result, this issue is not sufficient to support federal question jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 154 (4th Cir. 1994) ("[B]ecause the Plaintiffs' alternative theory of negligence per se is not 'essential' to their negligence theory, no federal subject matter jurisdiction exists.").

## C.     The federal issue is not "substantial."

Finally, even if this issue were necessarily raised and actually disputed, it is not sufficiently substantial to warrant federal jurisdiction. Whether a federal issue is "substantial" depends not upon the significance of the issue of the parties in the present case but "instead to the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. Under the circumstances of this case, the Supreme Court's decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson* is instructive. 478 U.S. 804 (1986). There, the plaintiffs alleged that the defendant, a pharmaceutical company, was liable under purely state law claims of negligence, fraud, breach of warranty, and products liability. *Id.* at 805. Included among their allegations was a contention that the defendant had violated a federal statute governing the labeling of certain pharmaceutical products, and that the violation of the statute "constitute[d] a rebuttable presumption of negligence."[13] *Id.* at 805-06. The pharmaceutical company removed the case,

---

[11]     Defendants argue a theory of negligence per se is in fact the only possible theory of negligence under these circumstances because the PLCAA would bar a claim of ordinary negligence. As the Court has already observed, it is not clear that the PLCAA would have that effect. Even if it would, the well-pleaded complaint rule prevents that defense from affecting this jurisdictional inquiry. On the face of the Complaint, the Plaintiffs have presented two viable theories of negligence: one based on ordinary negligence, and one based on a theory of negligence per se. The fact that one of those theories may be barred by a defense that Defendants will raise under the PLCAA is of no moment. As will be seen, even if a theory of negligence per se were essential to Plaintiffs' claims, this federal issue would not be substantial enough to confer federal question jurisdiction.

[12]     *Christianson* dealt with the grant of subject matter jurisdiction for actions "arising under any Act of Congress relating to patents," *see* 28 U.S.C. § 1338(a), but the Supreme Court has interpreted the phrase "arising under" in that statute identically to § 1331 and "appl[ies] [its] § 1331 and § 1338(a) precedents interchangeably." *Gunn*, 133 S. Ct. at 1064.

[13]     The plaintiffs' decision to use the phrase "rebuttable presumption of negligence" rather than to simply use the term negligence per se appears to have been attributable to a lack of clarity over whether state law would in fact treat a violation of the federal statute as negligence per se or simply as a presumption that a breach of duty occurred,

contending that the dispute over whether it had violated the federal statute was sufficient to invoke federal question jurisdiction. *See id.* at 813-17. The Court disagreed. Two considerations were particularly important to the Court's decision. First, the federal statute at issue in that case did not create a federal private right of action, which reflected a "congressional determination to preclude federal private remedies." *See id.* at 812, 814. Second, the only role the federal statute played in the case was to serve as an element to a state law cause of action. *See id.* at 814. From those two considerations, the Court concluded that "the presence of the federal issue as an element of the state tort [was] not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system," which meant that the federal issue was "insufficiently 'substantial' to confer federal-question jurisdiction." *See id.* at 814.

Those same considerations are present here. Defendants concede that § 922(b) does not create a private right of action, *see* Notice of Removal ¶ 73, which is consistent with the views of those courts that have considered the question. *See, e.g.*, *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469, at *7 (N.D. W. Va. Nov. 5, 2010), *aff'd*, 436 F. App'x 151 (4th Cir. 2011) ("The language, legislative history, and purpose of § 922 do not create a substantive federal right of the plaintiffs to recover damages from the defendant."); *see also Rains v. Bend of the River*, 124 S.W.3d 580, 591 n.11 (Tenn. Ct. App. 2003) (noting that "there have been several unsuccessful attempts to amend the Gun Control Act of 1968 to expressly provide a civil cause of action for negligent handgun and ammunition sale"). And, as in *Merrill Dow*, the federal issue enters into the case only as an element to Plaintiffs' state law negligence claim. This case thus falls squarely within the holding of *Merrill Dow*:

> "[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

478 U.S. at 817.

More recently, the Court highlighted a distinction between those cases where the federal dispute presents a "pure issue of law" that "could be settled once and for all" and those cases where the outcome of the federal dispute will be "fact-bound and situation-specific." *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quoting Richard H. Fallon, Daniel J. Meltzer, & David L. Shapiro, *Hart and Weschler's The Federal Courts and The Federal System* 65 (5th ed. 2003)). When a case falls into the latter category, the federal issue is not as substantial, because resolving the federal dispute will be primarily of value to the parties rather than to the federal system as a whole. *See Gunn*, 133 S. Ct. at 1068 (citing *Empire Healthchoice*, 547 U.S. at 701).

---

which the defendant could then rebut. *See* Brief for Respondents, *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986) (No. 85-619), 1985 WL 669363, at *33-34 ("The legal effect of violations of the [statute] in the instant case will be determined by the common law of Ohio.").

That is the case here. If it turns out to be true that the ammunition Jourdain purchased is capable of being used in certain rifles, whether that will suffice to show that the ammunition was not "other than . . . for a shotgun or rifle" will likely turn on a number of fact-specific considerations. When the Sixth Circuit confronted this question in *Appalachian*, the court's application of the statute was informed by evidence that, on one hand, "a limited number of antiquated rifles exist[ed] on the gun show circuit that [were] capable of firing" the ammunition, and, on the other hand, that the ammunition was "universally regarded and marketed as strictly handgun ammunition." *See Appalachian*, 387 F.3d at 466. Similar evidence is likely to be presented here. Plaintiffs have already produced a volume of evidence pertaining to how this particular type of ammunition is marketed to consumers, both domestically and abroad.[14] Undoubtedly, the parties will also seek to develop evidence concerning the styles and vintages of firearms capable of firing this ammunition and the way that this ammunition is perceived in the marketplace. The end product is likely to be a "fact-bound and situation-specific" determination of whether the sale of this particular ammunition, at this particular time, violated federal law. That may be of substantial significance to the parties, but not to the federal system.

For these reasons, Plaintiffs' well-pleaded Complaint does not "necessarily raise a stated federal issue" that is "actually disputed and substantial." *See Gunn*, 133 S. Ct. at 1065 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Accordingly, there is no federal question jurisdiction over this action.

## V.    Conclusion

Plaintiffs have stated colorable claims against Everett and Javier. As a result, they were not fraudulently joined, which means that subject matter jurisdiction on the basis of diversity does not exist. Nor does federal question jurisdiction exist, because none of Plaintiffs' exclusively state law claims raise a federal issue sufficient for this case to be deemed to arise under federal law. Plaintiffs' motion to remand this case to the Court of Common Pleas is granted. An appropriate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[14]    *See* Pl.'s Mem. Supp. Remand 18-23, ECF No. 18-2.